**COASTAL HABITAT ALLIANCE,**
Appellant

v.

**PUBLIC UTILITY COMMISSION OF TEXAS; Barry T. Smitherman, Chairman; Kenneth W. Anderson, Jr., Commissioner; Donna L. Nelson, Commissioner; Texas Gulf Wind LLC; PPM Energy, Inc.; and AEP Texas Central Company, Appellees.**

No. 03–08–00205–CV.

Court of Appeals of Texas, Austin.

July 8, 2009.

Catherine J. Webking, Attorney & Counselor at Law, Austin, TX, James B. Blackburn, Jr., Blackburn Carter, P.C., Houston, TX, for appellant.

John F. Williams, Patrick J. Pearsall, Marnie A. McCormick, Clark, Thomas & Winters, P.C., Thomas H. Watkins, Elizabeth G. (Heidi) Bloch, Christopher Hughes, Brown, McCarroll, L.L.P., Nathan M. Bigbee, Douglas Fraser, Assistant Attorneys General, Austin, TX, James H. Barkley, Karlene Poll, Macey Reasoner Stokes, Jason Ryan, Baker Botts, L.L.P., Houston, TX, for appellee.

Before Justices PATTERSON, PEMBERTON and WALDROP.

### OPINION

G. ALAN WALDROP, Justice.

At issue in this case is the district court's subject-matter jurisdiction to review the Public Utility Commission's denial of a motion to intervene in a proceeding before the Commission. The Commission denied appellant Coastal Habitat Alliance's motion to intervene in the Commission's consideration of an electric utility's application to amend its certificate of convenience and necessity. The Alliance filed suit in district court in an attempt to appeal or challenge the order denying the request to intervene. The district court

dismissed the Alliance's lawsuit for lack of subject-matter jurisdiction. We hold that the Administrative Procedure Act does not authorize a non-party such as the Alliance to independently pursue judicial review of a final order or decision of the Public Utility Commission. We also hold dismissal of the Alliance's claim for declaratory relief to be proper because, by statute, the denial of the Alliance's intervention was a matter committed to the Commission's discretion. Although a constitutional due process claim may be asserted by a nonparty to an administrative proceeding, the Alliance has failed to allege the deprivation of a vested property right as a result of the denial of its intervention. We affirm the judgment of the district court.

### Factual and Procedural Background

On June 25, 2007, appellee AEP Texas Central Company (AEP TCC) filed with the Public Utility Commission of Texas an application to amend its certificate of convenience and necessity (CCN) to construct, own, and operate a 21.6–mile, 345–kilovolt, double-circuit transmission line on Kenedy Ranch in Kenedy County. The transmission line is intended to interconnect two proposed wind generation facilities to be constructed on the ranch. On August 9, 2007, appellant Coastal Habitat Alliance filed a motion to intervene in the Commission's review of AEP TCC's application. The Alliance is an association of landowners and environmental groups formed for the purpose of protecting their environmental interests in the coastal region on which the transmission line would be located.[1] The motion to intervene alleged "adverse effects of this project on coastal wetlands, flora and fauna in the region, and endangered and migratory species."

1. Members of the Alliance identified in its motion to intervene include the American Bird Conservancy, the Coastal Bend Audubon Society, the Houston Audubon Society, the Lower Laguna Madre Foundation, and King Ranch, Inc.

The Commission denied the Alliance's motion to intervene on September 7, 2007, concluding that the Alliance had not shown a justiciable interest in the proceeding. The Alliance timely filed an appeal of the denial to the Commission, *see* 16 Tex. Admin. Code § 22.123(a)(2) (2009) (Pub. Util. Comm'n, Appeal of an Interim Order and Motions for Reconsideration of Interim Order Issued by the Commission), and the Commission issued a written order denying the appeal on October 29, 2007. The Alliance then filed a motion for reconsideration, *see id.* § 22.123(b), but no commissioner placed the motion on the agenda for an open meeting, causing the motion to be overruled by operation of law as of November 13, 2007, *see id.* § 22.123(b)(6)(A).

On November 27, 2007, the Commission issued a Notice of Approval granting AEP TCC's application to amend its CCN. On December 4, 2007, the Alliance filed suit in district court against the Commission, as well as Chairman Barry T. Smitherman and Commissioners Julie C. Parsley and Paul Hudson in their official capacities,[2] seeking reversal of the order denying its motion to intervene and seeking to vacate the administrative approval of the underlying CCN based on the claim that the denial of the Alliance's request to intervene was improper. In its original petition, the Alliance asserted that the denial of its intervention violated the Texas Utility Code and the Alliance's right to due process and due course of law, and sought declaratory relief under the Administrative Procedure Act, mandamus relief, and injunctive relief.[3]

By agreement among the parties, a hearing on the merits was set for March 5, 2008, in the district court. On February 21, 2008, AEP TCC and the Commission filed pleas to the jurisdiction seeking dismissal of the lawsuit. On March 4, 2008, the Alliance filed a response to the pleas to the jurisdiction, and filed a motion for leave to file an amended petition, by which the Alliance sought to add a claim for relief under the Uniform Declaratory Judgments Act as an additional basis for declaratory relief. Following the March 5 hearing on these pre-trial motions, the district court, on March 6, 2008, denied the Alliance's motion to amend its original petition, granted the pleas to the jurisdiction, and dismissed the Alliance's lawsuit. Coastal Habitat Alliance appeals.

### Analysis

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex.2000). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). In deciding a plea to the jurisdiction, we are not to

2. After this appeal was filed, Kenneth W. Anderson, Jr. was appointed to replace Julie C. Parsley as commissioner, and Donna L. Nelson was appointed to replace Paul Hudson as commissioner. The successors have been substituted as appellees. *See* Tex.R.App. P. 7.2(a).

In addition, at the district court, appellees AEP TCC, Texas Gulf Wind LLC, and PPM Energy, Inc. intervened in the lawsuit. Texas Gulf Wind and PPM Energy are developing the proposed wind farms to be connected to AEP TCC's transmission line.

3. After filing the original petition in district court, on December 17, 2007, the Alliance filed a motion for rehearing with the Commission as to the Notice of Approval itself. To the extent the motion was a viable motion, it was overruled by operation of law after no commissioner took action on it. *See* Tex. Gov't Code Ann. § 2001.146(c) (West 2008).

weigh the merits of the plaintiff's claims beyond the extent necessary to determine jurisdiction, but are to consider the plaintiff's pleadings, construed in the plaintiff's favor, and evidence pertinent to the jurisdictional inquiry. *Id.* at 227–28; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

■ In this lawsuit, Coastal Habitat Alliance seeks judicial review of the Commission's interlocutory order denying the Alliance's motion to intervene. "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 397 (Tex.2000) (citing *Stone v. Texas Liquor Control Bd.,* 417 S.W.2d 385, 385–86 (Tex.1967)). The Alliance argues that it has a right to judicial review based on (1) the Administrative Procedure Act, (2) the Uniform Declaratory Judgments Act, and (3) the constitutional right of due process and due course of law.

### Administrative Procedure Act

■ The Alliance has a right to judicial review of an administrative order if a statute provides that right. *See id.* The Alliance asserts that the Administrative Procedure Act (APA)[4] gives the district court jurisdiction over the Alliance's lawsuit that amounts to an appeal of the denial of its request to intervene. Section 2001.171 of the APA states as follows: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." Tex. Gov't Code Ann. § 2001.171 (West 2008). The Texas Supreme Court has held that section 2001.171 provides an independent right to judicial review of a decision in a contested case. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 173 (Tex.2004). However, the supreme court limited its holding to situations in which the agency's enabling statute "neither specifically authorizes nor prohibits judicial review of the decision." *Id.*

The Public Utility Regulatory Act (PURA)[5] specifically authorizes review of decisions by the Commission. Section 15.001 of the PURA provides that "[a]ny party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule." Tex. Util.Code Ann. § 15.001 (West 2007). However, the Alliance was not a *party* to the Commission's review of AEP TCC's application because the Alliance's attempt to intervene was denied. The APA defines a "party" as "a person or state agency named or admitted as a party." Tex. Gov't Code Ann. § 2001.003(1) (West 2008). The Alliance was neither named nor admitted as a party. The Commission's rules reach the same result, providing that parties to a proceeding include applicants and complainants, respondents, intervenors, and commission staff representing the public interest, *see* 16 Tex. Admin. Code § 22.102(a) (2009) (Pub. Util. Comm'n, Classification of Parties), but "[a]ny person that has not intervened in a proceeding, or who has been denied permission to inter-

---

**4.** Tex. Gov't Code Ann. §§ 2001.001–.902 (West 2008).

**5.** Tex. Util.Code Ann. §§ 11.001–66.016 (West 2007 & Supp.2008). The PURA is the Public Utility Commission's enabling statute. *See Office of Pub. Util. Counsel v. Public Util. Comm'n,* 843 S.W.2d 718, 720 n. 5 (Tex.App.-Austin 1992, writ denied).

vene, shall not be considered a party," *id.* § 22.102(c). The Alliance was not allowed to intervene. Therefore, the PURA specifically authorizes judicial review of a proceeding before the Commission, but in a manner that excludes an entity—such as the Alliance—who is not a party to the proceeding.

Based on the supreme court's holding in *Mega Child Care*—that APA section 2001.171 provides an independent right to judicial review in situations in which the agency's enabling statute "neither specifically authorizes nor prohibits judicial review of the decision," *see* 145 S.W.3d at 173—this Court has held that an independent right to judicial review under the APA applies only "when the agency's enabling act is silent" as to judicial review, *see West v. Texas Comm'n on Envtl. Quality,* 260 S.W.3d 256, 260–61 (Tex.App.-Austin 2008, pet. denied). The PURA is not silent on this matter. It specifically authorizes judicial review only for parties. *See* Tex. Util.Code Ann. § 15.001. We, therefore, hold that a non-party to a proceeding before the Commission is not statutorily entitled to judicial review of the Commission's decision to deny intervention under either the PURA or the APA.[6] This

holding is consistent with this Court's determination in a prior case that a non-party has no statutory right to judicial review of a decision by the Public Utility Commission:

> The [plaintiff] did not participate in the administrative hearing in any capacity before the Commission issued its decision and did not obtain permission to intervene in the administrative proceeding; the [plaintiff], therefore, was not a party to the proceeding and does not have a statutory right to judicial review of the Commission's decision.

*City of Port Arthur v. Southwestern Bell Tel. Co.,* 13 S.W.3d 841, 844 (Tex.App.-Austin 2000, no pet.) (citing Tex. Util.Code Ann. § 15.001; 16 Tex. Admin. Code § 22.102(c)).[7]

PURA section 15.001 authorizes only a party to obtain judicial review of a proceeding before the Commission. *See* Tex. Util.Code Ann. § 15.001. The Alliance was not a party to the administrative proceeding below. *See* 16 Tex. Admin. Code § 22.102(c). Consequently, the Alliance has no statutory right under the APA to judicial review of the Commission's order denying the Alliance's intervention.[8]

---

**6.** Our holding that there is no statutory basis for a non-party to appeal the Commission's denial of a motion to intervene does not foreclose the possibility of review via mandamus. *See State v. Thomas,* 766 S.W.2d 217, 218–20 (Tex.1989) (granting petition for writ of mandamus and ordering Public Utility Commission to vacate its order denying Texas Attorney General's intervention). The Alliance has not appealed the dismissal of its request for mandamus relief.

**7.** The Alliance cites *Railroad Commission v. Ennis Transportation Co.,* 695 S.W.2d 706 (Tex.App.-Austin 1985, writ ref'd n.r.e.), to demonstrate that this Court has exercised jurisdiction to review an administrative agency's decision to deny intervention. However, while this Court in *Ennis Transportation* did address the merits of a denial of intervention

in an administrative proceeding, the source of the district court's jurisdiction over the non-party's appeal was not addressed. *See generally* 695 S.W.2d 706. Moreover, the case involved an administrative proceeding before the Railroad Commission—not the Public Utility Commission—and therefore, PURA section 15.001 would not have applied to the proceedings. *See id.* at 708.

**8.** Ignoring the impact of PURA section 15.001 and focusing on APA section 2001.171 alone, the Alliance argues it "exhausted all administrative remedies" by timely appealing to the Commission the denial of its motion to intervene and by filing a motion for reconsideration in accordance with the Commission's rules, and was "aggrieved by a final decision" that approved the construction of a transmission line contrary to the Alliance's environ-

*Uniform Declaratory Judgments Act*

■ Coastal Habitat Alliance next asserts that the Uniform Declaratory Judgments Act (UDJA)[9] provides a statutory right to judicial review of the administrative order denying its motion to intervene. The UDJA provides that a person whose rights, status, or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute, and may obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (West 2008). The Alliance contends that the district court has jurisdiction over the Alliance's UDJA claim because it seeks the proper construction of PURA section 37.054(b) and a declaration that the Alliance is entitled to intervene in accordance with that statute. Section 37.054(b) of the PURA governs a person's ability to intervene in the Commission's consideration of a utility's application to amend a CCN. *See* Tex. Util.Code Ann. § 37.054(b) (West 2007). Specifically, that section provides that a

person "interested in the application" may intervene. *Id.*

■ The Alliance's request for declaratory relief in its original petition did not contain a reference to the UDJA.[10] The Alliance sought to amend its pleadings to reference the UDJA, but the district court denied the motion. Appellees argue that the Alliance's motion for leave to amend its pleadings, which was filed the day before the scheduled hearing on the merits, was properly denied because the amendment "operated as a surprise" to appellees, *see* Tex.R. Civ. P. 63, and would have reshaped the Alliance's cause of action, *see* *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980). The Alliance counters that its original petition contained sufficient facts and arguments to constitute a UDJA claim and the amendment merely supplied the proper statutory citation. A decision to deny an amendment to the pleadings that is not mandatory may be reversed only if it is a clear abuse of discretion. *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994). We need not determine whether the district court's denial of the Alliance's

mental interests. *See* Tex. Gov't Code Ann. § 2001.171. In response, appellees assert that the APA itself could be construed to foreclose judicial review for a non-party. *See id.* §§ 2001.145(a) ("A timely motion for rehearing is a prerequisite to an appeal in a contested case ...."), 2001.146(a) ("A motion for rehearing in a contested case must be filed by a party...."). *But see Thomas*, 766 S.W.2d at 225–26 (Hecht, J., dissenting) (arguing that denial of motion to intervene should be appealable). Moreover, even if the APA would authorize judicial review for a non-party appealing an interlocutory order relating to the denial of intervention, appellees assert that the Alliance's petition was untimely because it was filed before the decision in the case became final. *See Lindsay v. Sterling*, 690 S.W.2d 560, 563–64 (Tex.1985) (dismissing lawsuit reviewing administrative decision where plaintiff filed suit before motion for rehearing was overruled at agency level). We need not resolve these issues concerning the

APA, however, because we conclude that the PURA acts to prevent the APA from providing an independent right to judicial review of a contested case before the Commission.

9. Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 2008).

10. The original petition sought declaratory relief only under section 2001.038 of the APA, which authorizes an action for declaratory judgment to determine the "validity or applicability of a rule." Tex. Gov't Code Ann. § 2001.038(a); *see Friends of Canyon Lake, Inc. v. Guadalupe–Blanco River Auth.*, 96 S.W.3d 519, 529 (Tex.App.-Austin 2002, pet. denied) ("[Section 2001.038] authorizes a district court to resolve two issues: (1) whether a rule is *valid,* and/or (2) whether a rule is *applicable.*"). The Alliance does not challenge the district court's dismissal of the APA section 2001.038 claim.

motion to amend its pleadings was an abuse of discretion, however, because we determine that appellees' pleas to the jurisdiction would have been properly granted as to the Alliance's UDJA claim.

■■■ Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 369–70 (Tex.2009); *Texas Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). A justiciable controversy regarding whether a state agency or official has acted beyond its statutory authority provides a jurisdictional basis for a UDJA action seeking statutory construction of that authority. *Texas Dep't of Ins. v. Reconveyance Servs., Inc.,* 240 S.W.3d 418, 428 (Tex. App.-Austin 2007, pet. filed). However, a suit that seeks to control a state official's exercise of discretion within his legal authority is a suit to control state action, which is barred by sovereign immunity absent legislative consent. *McLane Co. v. Strayhorn,* 148 S.W.3d 644, 649 (Tex.App.-Austin 2004, pet. denied); *see Heinrich,* 284 S.W.3d at 371 (suit alleging violation of statute "leaving no room for discretion" is not barred).

■■ Therefore, if the Commission's denial of the Alliance's motion to intervene was a valid exercise of discretion, the Alliance's UDJA claim is barred by sovereign immunity. In *Railroad Commission v. Ennis Transportation Co.,* this Court recognized that generally "the allowance

or denial of petitions for intervention in administrative proceedings rests in the discretion of the agency." 695 S.W.2d 706, 710 (Tex.App.-Austin 1985, writ ref'd n.r.e.). The plaintiffs in *Ennis Transportation* were contract carriers who had appealed an agency's denial of their participation as parties to an administrative proceeding, and the trial court had concluded that the carriers were "interested parties" who were *entitled* to so participate. *See id.* at 708–09. This Court reversed the district court's judgment, holding that while the agency could allow the carriers to intervene, it was not compelled to do so. *See id.* at 711–12.[11]

Section 37.054(b) of the PURA provides that a "person or electric cooperative interested in the application may intervene at the hearing." Tex. Util.Code Ann. § 37.054(b).[12] The Alliance contends that because section 37.054(b) of the PURA uses the permissive verb "may" with the interested person as the subject, a person claiming an interest holds the discretion regarding his intervention, not the Commission. According to the Alliance's construction, section 37.054(b) mandates that the Commission comply with such a person's exercise of discretion to intervene.

However, the Alliance's statutory construction conflicts with this Court's analysis in *Ennis Transportation.* In that case, the governing statute—the Motor Carrier Act—provided that interested parties "may appear" in the proceeding. *See* Act

---

11. Similarly, a *court's* decision on a party's intervention is vested in the discretion of the court. *See In re Lumbermens Mut. Cas. Co.,* 184 S.W.3d 718, 722–23 (Tex.2006) (court of appeals' denial of intervention reviewed for abuse of discretion); *Zeifman v. Michels,* 229 S.W.3d 460, 465 (Tex.App.-Austin 2007, no pet.) (trial court's denial of intervention reviewed for abuse of discretion).

12. The Commission's rules state, "A person has standing to intervene if that person: (1) has a right to participate which is expressly conferred by statute, commission rule or order or other law; or (2) has or represents persons with a justiciable interest which may be adversely affected by the outcome of the proceeding." 16 Tex. Admin. Code § 22.103(b) (2009) (Pub. Util. Comm'n, Standing to Intervene).

of March 13, 1929, 41st Leg., R.S., ch. 314, § 12, 1929 Tex. Gen. Laws 698, 703 (repealed by Act of May 24, 1995, 74th Leg., R.S., ch. 705, § 31(a)(4), 1995 Tex. Gen. Laws 3719, 3740). Nevertheless, this Court stated that it had "not been shown a provision of the Motor Carrier Act ... requiring the [agency] to allow the contract carriers to appear and protest applications for service." 695 S.W.2d at 710. In addition, the agency had adopted a rule of practice stating that a party in interest "may appear in any proceeding" before the agency. *Id.* at 711. Again, this Court concluded from this language that there was "no rule specifically requiring the [agency] to allow" the intervention requested. *Id.* at 711–12. This Court's interpretation of the applicable statute and rule in *Ennis Transportation* was based on the fact that the term "party in interest" was not defined in the agency's rules and, therefore, the agency was not compelled to allow a person claiming an interest to intervene. *Id.* The same reasoning applies here. Even if we were to agree that PURA section 37.054(b)'s use of "may" places discretion in the hands of an interested person, we would still hold that the Commission has discretion to determine whether a person is in fact "interested" in the first place. Based on this Court's holding in *Ennis Transportation,* we conclude that whether the Alliance is "interested" so as to be able to intervene in the administrative proceeding below was a matter within the Commission's discretion.

Under the amended petition filed by the Alliance, the Alliance sought a declaration under the UDJA that the Notice of Approval is void and that the Commission must allow the Alliance's participation as a party in the review of AEP TCC's application. Given that the denial of the Alliance's intervention was a discretionary act, this UDJA claim is an "attempt to exert control over the state," which is barred by sovereign immunity. *See Heinrich,* 284 S.W.3d at 372, (ultra vires exception to sovereign immunity does not include complaint over government officer's exercise of discretion); *North Alamo Water Supply Corp. v. Texas Dep't of Health,* 839 S.W.2d 455, 459 (Tex.App.-Austin 1992, writ denied) ("The fact that the [agency] might decide 'wrongly' in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial decision."). Therefore, the UDJA does not provide the Alliance with a right to judicial review of the Commission's administrative order. We affirm the dismissal of the Alliance's claim for declaratory relief for lack of jurisdiction.

*Due Process*

Under Texas law, a party may have a right to judicial review of an administrative order if the order adversely affects a vested property right or otherwise violates a constitutional right. *Continental Cas. Ins. Co.,* 19 S.W.3d at 397; *see Public Util. Comm'n v. Pedernales Elec. Coop., Inc.,* 678 S.W.2d 214, 222 n. 6 (Tex. App.-Austin 1984, writ ref'd n.r.e.) (noting that even if legislature denies judicial review of agency action, judicial review is available for deprivation of property without due process). Coastal Habitat Alliance contends that the Commission's denial of the Alliance's intervention deprived it of its constitutional right to due process, *see* U.S. Const. amend. XIV, § 1, and due course of law, *see* Tex. Const. art. I, § 19. Procedural due process requires notice and "an opportunity to be heard at a meaningful time and in a meaningful manner." *University of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 930 (Tex.1995) (citing *Mathews v. Eldridge,* 424 U.S. 319,

333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).[13] The Alliance asserts that the denial of its intervention violated its right to due process because it was unable to participate in a meaningful manner, including the conduct of discovery, the introduction of evidence at a hearing, and the cross-examination of witnesses.

Before considering what process is due, however, our first inquiry in a procedural due process claim is whether the plaintiff has been deprived of a property or liberty interest deserving protection under the federal and state constitutions. If a plaintiff fails to allege the deprivation of such an interest, the plaintiff has failed to allege a due process claim. *See Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560–61 (Tex.1985); *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 248–49 (Tex.App.-Fort Worth 2007, pet. denied).

The Alliance argues that, as an interested entity in the administrative proceedings, it had a vested interest in seeking a hearing and in participating as a party to protect its interests. However, we have already determined that the denial of the Alliance's motion to intervene—and, specifically, the determination that the Alliance was not an "interested" person—was a matter of the Commission's discretion. *See Ennis Transp.*, 695 S.W.2d at 710. Therefore, a person's desire to intervene in a proceeding before the Commission is not a vested property interest entitled to protection under the federal and state constitutions. *See Weatherford v. City of San Marcos*, 157 S.W.3d 473, 483–84 (Tex.App.-Austin 2004, pet. denied) (finding no vested property right in rezoning application, which is legislative act subject to discretion of city). The Alliance must demonstrate a vested property interest that will be deprived by the denial of its intervention in the proceeding other than its interest or desire to intervene. *See Pickell v. Brooks*, 846 S.W.2d 421, 426 (Tex.App.-Austin 1992, writ denied) ("[P]rocedural due-process analysis protects only what actually belongs to the individual, rather than recognizing that unfairness exists in the very act of disposing of an individual's situation without allowing the individual to participate in some meaningful way.").

The Alliance contends that it possesses property rights that will be harmed by the proposed transmission line's impact on wildlife. According to the Alliance, the transmission line and its associated wind farms would disrupt a "unique and vital migratory bird corridor" and could destroy a "known endangered species habitat," and these consequences would, in turn, impair the Alliance's members' interests in wild bird conservation and birdwatching. One member of the Alliance, King Ranch, is an adjacent property owner to Kenedy Ranch, and its president alleges the proposed transmission line's threat to wildlife habitat will impair the profitability of King Ranch's birdwatching, wildlife tourism, and hunting expeditions on its property.[14]

13. "While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction. As a result, in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues." *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995) (citation omitted).

14. In its briefing, the Alliance states that King Ranch "provides 825,000 acres of vested property rights." Our question is not merely whether the Alliance's members *possess* vested property rights, however, but whether there is any allegation that any such rights have been *deprived*. There is no allegation that the transmission line would traverse King Ranch's property. The only alleged harm to King Ranch's real property interests

Similarly, the chairman of the board of trustees of the Lower Laguna Madre Foundation (another member of the Alliance) alleges potential harm to his financial interests in leading birdwatching tours on the coast.

■ The Alliance cites no authority for its proposition that a vested property right may exist in wildlife, or in the viewing, enjoyment, or hunting thereof. On the contrary, under state law, no vested property interest exists in wild animals. *Hollywood Park Humane Soc'y v. Town of Hollywood Park*, 261 S.W.3d 135, 140 (Tex.App.-San Antonio 2008, no pet.). Wild birds, as wild animals, belong to the State, and no individual property rights exist in them as long as they remain wild, unconfined, and undomesticated. *Id.* The Alliance does not allege that any of the birds that would be harmed by the transmission line have ever ceased being wild, unconfined, or undomesticated.[15] The Alliance cites to federal case law holding that environmental plaintiffs adequately allege injury in fact for purposes of standing when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *American Bird Conservancy, Inc. v. Federal Commc'ns Council*, 516 F.3d 1027, 1031 (D.C.Cir.2008). Whether a plaintiff has standing in federal courts to assert a cause of action is not indicative of the deprivation of a vested property right. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 681 (9th Cir.2001) ("That the litigant's interest [for

purposes of standing] must be greater than that of the public at large does not imply that the interest must be a substantive right sounding in property or contract."). This Court has held that "[a]n injury need not affect 'vested' property rights to confer standing" and, thus, "the harm [for purposes of standing] may be economic, recreational, or environmental." *Texas Rivers Prot. Ass'n v. Texas Natural Res. Conservation Comm'n*, 910 S.W.2d 147, 151–52 (Tex.App.-Austin 1995, writ denied). The Alliance's allegation that its alleged harm would constitute an injury in fact for purposes of standing, therefore, does not suffice as an allegation of a deprivation of a constitutionally protected interest.

Consequently, the interests alleged by the Alliance do not constitute a vested property right sufficient to support a due process claim. Absent any allegation of deprivation of a vested property right, the Alliance has not alleged a right to judicial review based on an order that adversely affects a vested property right or otherwise violates a constitutional right. *See Continental Cas. Ins. Co.*, 19 S.W.3d at 397. The district court properly dismissed the Alliance's due process claim for lack of jurisdiction.

### Conclusion

We hold that (1) the APA does not provide Coastal Habitat Alliance with a right to judicial review of the denial of its intervention before the Public Utility Commission, (2) sovereign immunity would bar a UDJA claim based on such denial, and (3) the Alliance failed to allege the deprivation of any vested property interest as a result of such denial. Therefore, we af-

---

is the impact the transmission line could have on King Ranch's wildlife-related activities.

**15.** Indeed, it seems the Alliance's allegation of harm *depends* on the fact that the birds are

wild, unconfined, and undomesticated—and thus fit for birdwatching and habitat conservation.

firm the judgment of the district court dismissing the Alliance's claims for lack of subject-matter jurisdiction.

Concurring and Dissenting Opinion by Justice PATTERSON.

JAN P. PATTERSON, Justice, concurring and dissenting.

The question before us is whether the district court properly granted the pleas to the jurisdiction filed by the Public Utility Commission and its Commissioners and the AEP Texas Central Company.[1] Contrary to the precedents of the Texas Supreme Court and this Court, the majority affirms the district court's order and, in doing so, perpetuates a "failure of justice"[2] that erodes confidence in the agency process and could easily have been resolved by the Commission itself in carrying out its core functions.[3] Because the allegations in the pleadings filed by the Coastal Habitat Alliance were sufficient to invoke the district court's jurisdiction to review the final order of the Commission under the Administrative Procedure Act, I would reverse the district court's order in part and remand for further proceedings.

The majority posits three basic conclusions:

(1) The Administrative Procedure Act does not authorize a non-party such as the Alliance to independently pursue judicial review of a final order or decision of the Public Utility Commission;

(2) Dismissal of the Alliance's claim for declaratory relief [was] proper because, by statute, the denial of the Alliance's intervention was a matter committed to the Commission's discretion and subject to review by mandamus; [and]

(3) Although a constitutional due process claim may be asserted by a non-party to an administrative proceeding, the Alliance has failed to allege the deprivation of a vested property right as a result of the denial of its intervention.

For the reasons that follow, I would conclude that section 2001.171 of the APA provides an independent right of judicial review of the Commission's final order. Based on that conclusion, I would also conclude that any remedy available under the UDJA would be redundant of the remedies available under the APA and, therefore, I agree with the majority's conclusion that the district court properly dismissed the Alliance's claims to the extent they were brought under the UDJA.[4] I also

1. Because the interests of these parties are aligned, I refer to them collectively as the "Commission" unless otherwise noted.

2. See, e.g., Krippendorf v. Hyde, 110 U.S. 276, 285, 4 S.Ct. 27, 28 L.Ed. 145 (1884) (explaining that purpose of allowing parties to intervene in legal proceedings is to prevent a "failure of justice").

3. Recognizing "the Commission's liberal policy of intervention," then-Chairman Paul Hudson stated in his dissent, "[T]he Commission's stance on intervention in CCN proceedings has become too narrow and discourages a robust development of the record." See Order Denying Appeal of Order No. 5, at 4–5, Application of AEP TCC to Amend a CCN for a 345–

KV Double Circuit Transmission Line in Kenedy County, Texas, PUC Docket No. 34298 (Pub. Util. Comm'n Oct. 29, 2007) (Paul Hudson, Chairman, dissenting), available at http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/34298_53_566364.PDF.

4. The majority suggests that review is improper under the UDJA because the Commission's denial of the Alliance's intervention was a matter committed to the Commission's discretion. See op. at 284 (citing Railroad Comm'n v. Ennis Transp. Co., 695 S.W.2d 706 (Tex. App.-Austin 1985, writ ref'd n.r.e.)). The APA, unlike the UDJA, expressly provides that a court "shall reverse or remand" an agency order that prejudices substantial rights if the

agree with the majority's conclusion that the Alliance has failed to state a constitutional due process claim. However, I disagree with the majority's conclusion that the Commission's order denying the Alliance's motion to intervene in the underlying administrative proceedings is subject to review only by mandamus.

### Judicial Review Under the APA

Relying on the supreme court's decision in *Texas Department of Protective & Regulatory Services v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173 (Tex.2004), the majority erroneously concludes that the Alliance cannot obtain judicial review under section 2001.171 of the APA because section 15.001 of the Public Utility Regulatory Act expressly provides that "[a]ny *party* to a proceeding before the [C]ommission is entitled to judicial review under the substantial evidence rule." Op. at 281 (citing Tex. Util.Code Ann. § 15.001 (West 2007)) (emphasis added). A reading of section 15.001, coupled with a proper application of the supreme court's decision in *Mega Child Care*, demonstrates that the Alliance has an independent right of judicial review under section 2001.171 of the APA.

Section 2001.171 of the APA provides:

A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.

Tex. Gov't Code Ann. § 2001.171 (West 2008). Interpreting this provision in 2004, the supreme court held that section 2001.171 of the APA provided an independent right of judicial review in a contested case. *Mega Child Care*, 145 S.W.3d at 173, 196 (citing Tex. Gov't Code Ann. § 311.016(4) (West 2005) ("'Is entitled to' creates or recognizes a right.")). The supreme court's holding was based in part on the statutory language in APA section 2001.178 that states, "This subchapter [including sections 2001.171 through .178] is cumulative of other means of redress provided by statute." *Id.* at 173, 183 (citing Tex. Gov't Code Ann. § 2001.178 (West 2008)). The supreme court explained, however, that this independent right of judicial review was limited to situations in which an agency's enabling act "neither specifically authorizes nor prohibits judicial review of the decision." *Id.* at 173. The majority misreads this limitation, finding a deliberate legislative choice where none exists.

Section 15.001 of the PURA expressly provides judicial review only for "any *party* to a proceeding before the [C]ommission." Tex. Util.Code Ann. § 15.001 (emphasis added). As the majority recognizes, however, the Alliance was never admitted as a party to the underlying administrative proceeding before the Commission. Because it was not a party, the Alliance cannot invoke section 15.001 of the PURA to obtain judicial review of the Commission's final order. But this does not preclude judicial review altogether. The plain language of section 15.001 does not specifically authorize judicial review by a non-party, nor does it specifically

---

agency order is "arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion." *See* Tex. Gov't Code Ann. § 2001.174(2)(F) (West 2008). It is appropriate to observe that discretionary choices of a tribunal are not to be left to a body's "inclination," but to its judgment, which is guided by "sound legal principles." *Unites States v. Burr*, 25 F. Cas. 30, 35 (D.Va.1807) (No. 14,692d) (Marshall, C.J.). In any event, the question whether the Commission's denial of the Alliance's intervention was an abuse of discretion goes to the merits of the Alliance's petition for judicial review and is, therefore, not before us in this interlocutory appeal from the district court's order granting the Commission's plea to the jurisdiction.

prohibit judicial review by a non-party. *See id.* The absence of statutory language with regard to non-parties is insufficient to create the presumption of non-reviewability. Applying the supreme court's precedent in *Mega Child Care*, then, I would hold that the Alliance has an independent right of judicial review under section 2001.171 of the APA. *See Mega Child Care*, 145 S.W.3d at 173.

This conclusion is consistent with this Court's decision in *West v. Texas Commission on Environmental Quality*, 260 S.W.3d 256, 260–62 (Tex.App.-Austin 2008, pet. denied). Although this Court in *West* concluded that the APA did not provide an independent right of judicial review, it did so because the water code expressly provided that a person was entitled to judicial review of the agency's decision. *See id.* at 260 (citing Tex. Water Code Ann. § 5.351(West 2000)). This Court's decision in *West* followed the general rule established by the supreme court in *Mega Child Care* and *Texas Natural Resource Conservation Commission v. Sierra Club*, 70 S.W.3d 809 (Tex.2002), that courts look to an agency's enabling act to determine the procedures for obtaining judicial review of the agency's decision unless the enabling act is silent—i.e., it neither authorizes, nor specifically prohibits judicial review. *Mega Child Care*, 145 S.W.3d at 197; *Sierra Club*, 70 S.W.3d at 811. In *West*, this Court concluded that the APA did not provide an independent right of judicial review because section 5.351 of the water code expressly provided for judicial review of the agency's decision.

Contrary to this Court's reasoning in *West*, the majority concludes that "PURA is not silent" because section 15.001 "specifically authorizes judicial review only for parties" and, therefore, a non-party like the Alliance is not entitled to judicial review. *See* op. at 282. But the majority

injects into section 15.001 a prohibition against judicial review by a non-party where none exists.

The plain language of PURA section 15.001 allows a party to the proceeding to seek judicial review of the Commission's decision. *See* Tex. Util.Code Ann. § 15.001. But section 15.001 says nothing about judicial review of the Commission's decision by a non-party. Section 15.001 is therefore silent on the matter of judicial review by a non-party because it neither authorizes judicial review by a non-party, nor does it prohibit judicial review by a non-party. *See Mega Child Care*, 145 S.W.3d at 197. Absent express statutory language prohibiting judicial review, a legislative intent to do so must be established by specific statutory history or other reliable evidence of intent, none of which is present in the record before us. *See id.* at 199. A proper reading of section 15.001 of the PURA in conjunction with the supreme court's holding in *Mega Child Care*, then, confirms that section 2001.171 of the APA provides an independent right of judicial review by a non-party such as the Alliance. *See id.* at 173, 197. As to section 15.001 of the PURA, I would resolve legislative silence in favor of an independent right of judicial review under section 2001.171 of the APA.

Clinging to outdated precedent, the majority asserts that its holding is consistent with this Court's prior holding in *City of Port Arthur v. Southwestern Bell Telephone Company*, 13 S.W.3d 841, 844 (Tex. App.-Austin 2000, no pet.), "that a non-party has no statutory right to judicial review of a decision by the Public Utility Commission." Op. at 282. But the majority's reliance on *City of Port Arthur* is misplaced because that case was decided four years prior to the supreme court's decision in *Mega Child Care* and, therefore, this Court did not consider whether

section 2001.171 of the APA provided an independent right of judicial review to a non-party.[5]

The question then is whether the Alliance has satisfied the requirements for judicial review under section 2001.171. By its plain language, section 2001.171 allows for judicial review by (1) a person (2) who has exhausted all administrative remedies available within a state agency (3) who is aggrieved by a final decision in a contested case. The Commission does not dispute that the Alliance is a person within the meaning of the statute or that the Alliance was aggrieved by a final decision by the Commission in a contested case. The Commission challenges only whether the Alliance has exhausted its administrative remedies.[6]

The Commission argues that, even if the APA provides an independent right of judicial review, the Alliance failed to exhaust its administrative remedies because the Alliance failed to comply with the APA prerequisites regarding motions for rehearing. *See* Tex. Gov't Code Ann. § 2001.145 (requiring timely motion for rehearing as prerequisite to appeal); .146 (requiring motion for rehearing to be filed within 20 days after the date of final agency order and allowing for 45 days from date of final agency order for agency to act on motion for rehearing) (West 2008). Citing the supreme court's decision in *Lindsay v. Sterling*, 690 S.W.2d 560 (Tex.1985), the Commission asserts that the Alliance's petition for judicial review was premature under the APA because the Alliance filed its petition for judicial review before it

5. Prior to the supreme court's holding in *Texas Department of Protective & Regulatory Services v. Mega Child Care, Inc.*, 145 S.W.3d 170 (Tex.2004), this Court had "repeatedly held that [section 2001.171 of the APA] is a procedural provision that does not confer independent subject matter jurisdiction on the district court." *See id.* at 173 (quoting *Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 557 (Tex.App.-Austin 2001, pet. denied)); *see also Carrizales v. Texas Dep't of Protective & Regulatory Servs.*, 5 S.W.3d 922, 924 (Tex.App.-Austin 1999, pet. denied); *Employees Ret. Sys. v. Foy*, 896 S.W.2d 314, 316 (Tex.App.-Austin 1995, writ denied); *Southwest Airlines v. Texas High–Speed Rail Auth.*, 867 S.W.2d 154, 158 (Tex.App.-Austin 1993, writ denied); *Motorola, Inc. v. Bullock*, 586 S.W.2d 706, 708–09 (Tex.Civ.App.-Austin 1979, no writ).

A careful reading of this Court's opinion in *City of Port Arthur v. Southwestern Bell Telephone Company*, 13 S.W.3d 841 (Tex.App.-Austin 2000, no pet.), reflects that the case could also have been decided on the ground that the City failed to exhaust its administrative remedies. The record of the underlying administrative proceeding at issue in *City of Port Arthur* was not before this Court on appeal, and the facts were taken from the parties' briefs. *See* 13 S.W.3d at 842 n. 1. The

opinion states that the City "complains that the district court erred in denying it permission to intervene in [Southwestern Bell]'s suit for judicial review," not that the Commission erred in striking the City's intervention in the underlying administrative proceeding. *See id.* at 843. Nothing in the opinion suggests that the City in that case, unlike the Alliance here, even attempted to intervene in the underlying administrative proceeding. Thus, having failed even to attempt to participate in the underlying administrative proceeding, the City could not have claimed that it had exhausted its administrative remedies and, therefore, would not have been entitled to judicial review under section 15.001 of the PURA or section 2001.171 of the APA. *See In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 624–25 (Tex.2007) (if agency has exclusive jurisdiction to resolve dispute, party must first exhaust administrative remedies before trial court has subject matter jurisdiction); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 227 (Tex.2002) (until exhaustion occurs, trial court must generally dismiss related litigation without prejudice).

6. Because it concludes that section 15.001 of the PURA forecloses judicial review of the Commission's decision by a non-party, the majority declines to "resolve these issues concerning the APA." *See* op. at 283 n. 8.

filed a motion for rehearing with the Commission and before the Commission either acted on the Alliance's motion for rehearing or the motion was overruled by operation of law. By failing to wait until the Commission acted on its motion for rehearing or wait until the motion was overruled by operation of law before filing its petition for judicial review, the Commission argues that the Alliance failed to exhaust its administrative remedies and, therefore, the district court lacked jurisdiction over the Alliance's petition for judicial review.

Placing form over substance, the Commission's argument ignores two significant factors applicable here: (1) neither the APA nor the Commission's procedural rules require, much less contemplate, that a non-party must file a motion for rehearing; and (2) the Alliance had already filed a motion for rehearing challenging the Commission's denial of its motion to intervene. Because I conclude that, under the circumstances of this case, the APA does not require a non-party like the Alliance to file a redundant motion for rehearing as a prerequisite for judicial review, I would conclude that the Alliance has satisfied the exhaustion requirement.

Section 2001.145 of the APA states that "a timely motion for rehearing is a prerequisite to an appeal in a contested case." *See* Tex. Gov't Code Ann. § 2001.145(a). And Texas courts, including this Court, have generally held that the failure to file a motion for rehearing deprives a district court of jurisdiction in a suit for judicial review of an agency's decision. *See Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex.1995); *Vandergriff v. First Fed. Sav. & Loan Ass'n of Breckenridge*, 586 S.W.2d 841, 842 (Tex.1979); *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 395–96 (Tex.App.-Austin 1987, writ ref'd n.r.e.); *see also* Tex. Gov't Code

Ann. § 311.034 (West Supp.2008) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). However, the statutory scheme for filing a motion for rehearing contemplates that one must have been a party to the underlying administrative proceeding in order to file a motion for rehearing. *See* Tex. Gov't Code Ann. § 2001.146(a) (specifying that a *party* may file a motion for rehearing within 20 days of the date on which an agency order may become final under section 2001.144). This statutory scheme is consistent with the Commission's own procedural rules, which preclude a non-party from filing a motion for rehearing. *See* 16 Tex. Admin. Code § 22.264(a) ("Only a *party* who has been granted intervenor status may file a motion for rehearing." (Emphasis added.)).

Because the Commission denied the Alliance's motion to intervene and overruled the Alliance's appeal and motion for reconsideration of that decision, the Alliance was not a party within the meaning of section 2001.146(a) of the APA or the Commission's rules. *See* Tex. Gov't Code Ann. § 2001.003(4) (defining "party" as "a person or state agency named or admitted as a party"). 16 Tex. Admin. Code § 22.103(b) (2008) ("Persons desiring to intervene must file a motion to intervene and be recognized as a party under § 22.104 of this title (relating to Motions to Intervene) in order to participate as a party in a proceeding."). As a non-party, the Alliance was not permitted to file a motion for rehearing under the APA or the Commission's rules. *See* Tex. Gov't Code Ann. § 2001.146(a); 16 Tex. Admin. Code § 22.264(a). Applying the statutory scheme to the facts and circumstances of this case, I would conclude that the Alliance, having already filed a motion for reconsideration, was not required to file a redundant motion for rehearing, and I

would reject the Commission's argument that the Alliance has failed to exhaust its administrative remedies.

The policy behind requiring parties to exhaust their available administrative remedies is to encourage parties to resolve their dispute without resorting to litigation when an administrative procedure has been provided for that purpose. *Vela v. Waco Indep. Sch. Dist.*, 69 S.W.3d 695, 702 (Tex.App.-Waco 2002, pet. withdrawn by agr.); *Gregg County v. Farrar*, 933 S.W.2d 769, 773 (Tex.App.-Austin 1996, writ denied) (citing *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991)). This Court has recognized:

> An eminently practical reason for requiring exhaustion of remedies is that the complaining party may be successful in vindicating his rights in the administrative process and never have to resort to court. Notions of administrative autonomy require further that the agency be given first opportunity to discover and correct its own errors.

*Texas Air Control Bd. v. Travis County*, 502 S.W.2d 213, 215–16 (Tex.App.-Austin 1973, no writ); *see also McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

With regard to the requirement that one must file a motion for rehearing before seeking judicial review, the purpose of that requirement is to notify an agency of potential errors in its order to allow the agency an opportunity to correct such errors before resorting to litigation. *See Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 364–65 (Tex. 1983); *Coalition for Long Point Pres. v. Texas Comm'n on Envtl. Quality*, 106 S.W.3d 363, 373 (Tex.App.-Austin 2003, pet. denied). Thus, even if the Alliance was required to file a motion for rehearing to exhaust its administrative remedies, I submit that the Alliance's appeal to the

Commission from the director's order denying intervention and the Alliance's motion for reconsideration of the Commission's order denying that appeal satisfied the Alliance's obligation to file a motion for rehearing. More importantly, the Alliance satisfied the underlying purpose of the exhaustion doctrine by providing the Commission with an opportunity to correct any alleged error before the Alliance resorted to litigation. *See Suburban Util. Corp.*, 652 S.W.2d at 364–65. In the absence of a statutory mandate and when it serves no valid purpose, a court should not create unnecessary hoops through which a litigant must leap.

This is consistent with the concept and structure of judicial review under section 2001.171 of the APA. Unlike the provisions relating to motions for rehearing, section 2001.171 speaks in terms of "persons" not "parties." *See* Tex. Gov't Code Ann. § 2001.171. By its plain language, section 2001.171 allows a person who has exhausted all administrative remedies available within a state agency to seek judicial review of the agency's final decision. *Id.* Thus, the Legislature has contemplated that a person, who is not a party to the underlying administrative proceeding, may still seek review of the agency's final order. *Id.*

The Commission, however, faults the Alliance and argues on appeal that, in order to exhaust its administrative remedies, the Alliance was required to file yet another motion for rehearing regarding the denial of its intervention once the Commission issued the notice of approval of the CCN application, while acknowledging that any motion for rehearing filed by the Alliance would have been a nullity under the Commission's rules. Stated differently, "[l]ike the chess player who tries to win by sweeping the opponent's pieces off the ta-

ble," [7] the Commission uses the doctrine of exhaustion as both a sword and shield to avoid the Alliance's right to judicial review of the Commission's order denying intervention. But the Commission cannot have it both ways. As the supreme court recognized in *City of Corpus Christi v. Public Utility Commission*, "concern for efficient administrative procedure requires consideration of the validity of interim orders only upon appeal from final orders." 572 S.W.2d 290, 299–300 (Tex.1978). The Commission's notice of approval was final as to the Alliance on the date it was issued because as a non-party the Alliance was neither required nor permitted to file a motion for rehearing. *See* Tex. Gov't Code Ann. §§ 2001.145–146; 16 Tex. Admin. Code § 22.264(a). For these reasons, I would conclude that the Alliance satisfied its obligation to exhaust administrative remedies and was not required to file yet another motion for rehearing, and I would hold that the Alliance's petition properly invoked the jurisdiction of the district court.[8]

### Jurisdiction under the UDJA

Because I conclude that the APA provides an independent right of judicial review, I would also conclude that an action for declaratory relief under the UDJA would be redundant and, therefore, would not lie. *See Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.-Austin 2002, no pet.) (a declaratory judgment action will not lie to provide redundant remedies); *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex.App.-Austin 1998, pet. denied) (when statute provides avenue for attacking agency order, declaratory judgment action will not lie to provide redundant remedies); *Ben Robinson Co. v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 153 (Tex.App.-Austin 1996, writ denied) (same). Accordingly, I agree with the majority's conclusion that the district court properly dismissed the Alliance's claims to the extent they were brought under the UDJA, but for different reasons than those expressed by the majority.[9]

7. *Ricci v. DeStefano*, —— U.S. ——, 129 S.Ct. 2658, 2705–706, 174 L.Ed.2d 490 (2009) (Ginsburg, J., dissenting).

8. Because I conclude that the Alliance was not required to file a motion for rehearing, I would also conclude that the Commission's reliance on *Lindsay v. Sterling*, 690 S.W.2d 560 (Tex.1985), is misplaced. In that case, the supreme court determined that a district court lacked jurisdiction over a petition for review filed before an agency acted on a pending motion for rehearing or the motion was overruled by operation of law. *Id.* at 563. Since a motion for rehearing was not required under the facts of this case, the supreme court's holding in *Lindsay* is simply inapposite.

Alternatively, even if a motion for rehearing was required, the district court could have abated the proceedings either to allow the agency an opportunity to act on the motion for rehearing or, if the agency chose not to act, to permit the motion to be overruled by operation of law. *See, e.g., Subaru of Am.*, 84

S.W.3d at 228 (quoting *American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001) (where " 'impediment to jurisdiction could be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured' ")); *cf.* Tex.R.App. P. 27.1(a) ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal."); *Newman v. Obersteller*, 960 S.W.2d 621, 623 (Tex.1997) (applying former Tex.R.App. P. 58, now Tex.R.App. P. 27.1); *Aguirre v. Texas Dep't of Protective & Regulatory Servs.*, 917 S.W.2d 462, 465 (Tex. App.-Austin 1996, no writ) (same).

9. With regard to the Alliance's claim that the district court erred in denying the Alliance leave to amend its pleadings to add a citation to the UDJA, I conclude this was not error based on my previous conclusion that the Alliance was entitled to judicial review under the APA. Because relief under the UDJA would have been redundant of any relief

I disagree, however, with the majority's assertion that the Alliance is not entitled to judicial review on the basis that the Commission's decision whether to permit the Alliance's intervention was a matter of discretion. While the UDJA may not provide an avenue of review for the discretionary acts of state officials, *see* op. at 285 (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex.2009)), the APA states that a court "shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are ... arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code Ann. § 2001.174(2)(F) (West 2008). Thus, the APA expressly provides an avenue for judicial review of discretionary acts of a state agency.

### Due Process and Deprivation of a Vested Right

I also agree with the majority's conclusion that the Alliance has not alleged a deprivation of a vested property right or otherwise asserted a violation of its constitutional rights and, therefore, is not entitled to judicial review on the ground that the Commission's order violates Due Process. *See, e.g., Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex.2000). On this point, the Alliance simply confuses the concepts of an injury-in-fact necessary to confer standing, which the Alliance asserts through its allegations that its members utilize the affected area and will be

harmed by the Commission's approval of TCC's application for a CCN, and deprivation of a vested property right, which they do not assert. As the majority recognizes, the alleged harm necessary to confer standing may be insufficient to demonstrate the deprivation of a vested property right entitled to constitutional protection on the grounds of Due Process.[10] *See* op. at 287.

### Review by Writ of Mandamus

In a footnote at page 7 of its slip opinion, the majority suggests that the Commission's denial of intervention was subject to review only by mandamus. Op. at 282 n. 6 (citing *State v. Thomas*, 766 S.W.2d 217, 218–20 (Tex.1989) and noting that the Alliance does not appeal the dismissal of its request for mandamus relief). This suggestion is contrary to the majority's conclusion that the Commission's denial of the Alliance's intervention was a discretionary act.

If the majority is correct in its claim that the Commission's denial of the Alliance's intervention was a discretionary act, then review by mandamus would not lie because it is well established in Texas law that courts will not issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts. *See O'Meara v. Moore*, 142 Tex. 350, 178 S.W.2d 510, 514 (1944) (orig. proceeding) (trial court cannot be compelled by mandamus to make particular findings); *Matlock v. Smith*, 96 Tex. 211, 71 S.W. 956, 956–57 (1903) (orig.

available to the Alliance under the APA, it was not error for the district court to disallow the pleading amendment.

10. That is not to say that the Alliance's interest should be foreclosed from review altogether. As then-Chairman Paul Hudson explained in his dissent, the Alliance's concerns

that the environment will be adversely affected, while not based in property ownership, is a concern that should have been examined by the Commission in the underlying administrative proceeding. *See* Order Denying Appeal of Order No. 5, at 5, *supra.*

proceeding) (judge cannot be compelled by mandamus to enter a different judgment even if his judgment is erroneous); *Aycock v. Clark,* 94 Tex. 375, 60 S.W. 665, 666 (1901) (orig. proceeding) (where act calls for the exercise of judicial discretion, mandamus will not lie to control that discretion). Applying this principle in the context of administrative proceedings, Texas courts also refrain from issuing writs of mandamus to control the exercise of discretion as opposed to ministerial acts by an administrative agency in adjudicative proceedings. *See Matlock,* 71 S.W. at 957 ("[E]ven as to an executive officer, if it be his duty to determine a question of fact, the courts will not control his decision by a writ of mandamus.").

The basic principle that mandamus will not lie to control the exercise of discretion explains the supreme court's grant of mandamus relief in *State v. Thomas,* 766 S.W.2d 217, 218–20 (Tex.1989). In that case, the supreme court determined that the constitution required that the Texas Attorney General be allowed to intervene in administrative proceedings before the Commission to establish utility rates. *See id.* Because it was a ministerial act to allow the attorney general to perform his constitutional duty—and not an exercise of judicial discretion—the supreme court's grant of mandamus relief was appropriate. *Id.*

In this case, however, the majority contends that allowing the Alliance to intervene in the underlying administrative proceedings was an act subject to the Commission's discretion. If the majority is correct in this contention, then the majority is incorrect to suggest that the Commission's action denying intervention is subject to review by mandamus. *Compare Thomas,* 766 S.W.2d at 218–20, *with Matlock,* 71 S.W. at 957.

Additionally, the majority's suggestion that the Commission's order denying intervention is subject to review by mandamus would defeat the requirement that one must exhaust administrative remedies before seeking review of agency decisions. Because many administrative decisions are subject to judicial review under either an agency's enabling act or the APA, it is unnecessary to provide for such review by way of mandamus. The supreme court has consistently recognized that, where there is an adequate remedy by way of appeal, the extraordinary remedy of mandamus is inappropriate. *See In re McAllen Med. Ctr.,* 275 S.W.3d 458, 462, 464–69 (Tex.2008); *Walker v. Packer,* 827 S.W.2d 833, 841–42 (Tex.1992); *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958).

To allow mandamus review in the context of interim agency orders would also be contrary to the supreme court's holding that an agency's interim orders are reviewable, if at all, only upon appeal from final orders. *See City of Corpus Christi,* 572 S.W.2d at 299–300. Although exceptions to the exhaustion doctrine exist, such exceptions do not compel the availability of mandamus relief. For these reasons, I disagree with the majority's conclusion that the Commission's order denying the Alliance's intervention was subject to review only by mandamus.

## CONCLUSION

Because I conclude that the APA provides an independent right of judicial review under the facts of this case, I respectfully dissent from the majority's conclusion that it does not. Albeit for different reasons, I agree with the majority's conclusions that the district court lacked jurisdiction to review the Alliance's claims under the UDJA and properly dismissed those claims. I also agree with the majority's conclusions that the Alliance has not al-

leged the deprivation of a vested property right or otherwise alleged the violation of a constitutional right and, therefore, is not entitled to judicial review on the ground of Due Process. However, I disagree with the majority's conclusion that the Commission's order denying intervention was subject to review only by mandamus. For these reasons, I would reverse the district court's order granting the pleas to the jurisdiction in part and remand for further proceedings.